J. Vernon McCANDLISH, Claimant-Appellant,

v.

ESTATE of Ralph W. TIMBERLAKE, Deceased, Columbia National Bank, Executor, Defendant-Respondent.

No. KCD26124.

Missouri Court of Appeals, Kansas City District.

June 25, 1973.

Howard E. Bodney, Kansas City, for claimant-appellant; Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, of counsel.

Lancie L. Watts, Walter A. Raymond, Kansas City, for defendant-respondent.

Before WASSERSTROM, P. J., and SHANGLER and PRITCHARD, JJ.

SHANGLER, Judge.

Appellant made a claim in the probate court which alleged breach by decedent of his personal promise to reimburse appellant for loss of pension rights in the conceded value of $15,997.37 which resulted when appellant resigned his reserve commission in the United States Army at the request of decedent so that appellant could continue the management of decedent's business. Appellant thereafter amended his claim in the probate court to allege breach by decedent of his contract to reimburse appellant by specific bequest in his will. There was demand for jury trial on the claim and the cause was transferred to the circuit court for determination as authorized by § 473.-420(2), RSMo 1969, V.A.M.S. At the conclusion of the pleadings the circuit court sustained the motion of respondent Executor for summary judgment and assigned as reasons: 1) the amended claim was barred by the nonclaim statute, § 473.360 and 2) if there was an enforceable claim, the obligation created by the contract had been substantially complied with and discharged by the provision of decedent's will whereby appellant received considerably more than $15,997.37, the amount of his claim.

Appellant contends that summary judgment for the Executor was inappropriate because as a matter of law, his amended claim was timely filed because it relates back to the original claim which was not barred by either the nonclaim statute or the general five-year limitation statute and that, in any event, whether the provision made for appellant in decedent's will is a specific bequest, as the court determined, or a general bequest, as appellant contends, presents a genuine issue of material fact for the jury.

The summary judgment rests on these uncontroverted facts. The appellant, J. Vernon McCandlish, was the nephew of decedent, Ralph W. Timberlake. At the request of his uncle, appellant and his wife removed from the East to Kansas City so that appellant could be trained to assume management of decedent's business and, in fact, appellant became assistant general manager of the company. Appellant was a reserve officer in the United States Army and the advent of the Korean War, which had commenced on June 25, 1950, raised the possibility that he would be called to active duty. As inducement for appellant to resign his commission, and thus insure the uninterrupted operation of the business, decedent promised to compensate him for any pension lost by reason of the relinquishment of commission. Appellant resigned his commission and remained with decedent's company until May 31, 1965, when he left for a better position. It is agreed that the cash value of the army pension right relinquished by appellant was $15,997.37.

Before the beginning of the Korean War decedent and his wife agreed to execute mutual wills whereby each of them would leave one-half of their respective estates to members of his (the Timberlake) family and her (the McCandlish) family and informed appellant he was to be inclued in the wills as a McCandlish. Decedent's Last Will and Testament, executed on July 27, 1967, provided for appellant to receive fifteen per cent of a residuary trust created by that instrument. Appellant has already received $30,000 as partial distribution under the will and stands to receive additional money.

The original claim filed by appellant in the probate court on October 13, 1970, 5 months and 10 days after the first publication of letters, alleged entitlement to

$15,997.37 from decedent's estate on the allegations that

At the time of the Korean situation reserve officers were being called back to active duty and there was a possibility that claimant might be called. Claimant was assistant general manager at the time and testator was dependent upon him for continued operation of business. Testator requested claimant to resign his commission in order to guarantee claimant's ability to stay with the company and personally promised to compensate claimant for any pension lost by reason of severing claimant's ties with the Reserves. Claimant thereupon allowed his commission to become inactive and was discharged from the Army.

The amended claim, filed on January 22, 1971, 8 months and 24 days after the first publication of letters, alleged entitlement to the sum on the allegations.

That during the summer of the year 1951, claimant was called into the office of the Deceased, Ralph W. Timberlake, and requested by him to resign his commission in the United States Army. Claimant then advised Deceased that if he did so, Claimant would lose the value of his retirement from the United States Army. Deceased then stated that if Claimant would resign said commission, or otherwise give it up, so as to avoid being called into active duty, Deceased would leave to Claimant, by specific provision in his Will, a sum of money equivalent to the value of said retirement.

Claimant then agreed with Deceased that he would resign or otherwise give up his commission in exchange for the money to be left to him by specific provision in Deceased's Will.

Claimant, pursuant to said agreement, and within a short time thereafter, gave up his commission in the United States Army thereby forfeiting his right to retirement benefits, and performed all of the things required of him to be performed thereunder.

The first reason assigned by the trial court for summary judgment—that the amended claim was barred by the six months limitation of the statute of non-claim—was premised on the determination that the original claim on its face was barred by the general five-year statute of limitation so that there was nothing the amended claim could relate back to. We agree with the trial court that the bar of the general statute of limitations defeats appellant's claim as a matter of law and conclude, further, that this determination is dispositive of the appeal.

It is evident that the original claim which alleges a promise by decedent to compensate for pension loss in exchange for the specified act of appellant to relinquish his commission declares on a unilateral contract. Underwood Typewriter Co. v. Century Realty Co., 220 Mo. 522, 119 S. W. 400, 404 (Banc 1909); Corbin on Contracts, §§ 63 and 70; Restatement of Contracts, § 45. It is equally evident that the amended claim which alleges mutual promises between decedent and appellant, the promissory offer of decedent to compensate for pension loss by specific provision in his will, on the one hand, and appellant's acceptance of the offer by the promised performance to give up his commission, on the other hand, pleads a bilateral contract. Aden v. Dalton, 341 Mo. 454, 107 S.W.2d 1070, 1073 [1–3]; Corbin on Contracts, § 21; Restatement of Contracts, § 12. The distinctions in legal operation which these two species of contract import, particularly as to performance, bear directly on the working of the statute of limitations.

Appellant contends his original claim is not on its face barred by limitations, and thus is properly succeeded by the amended claim, because the contract pleaded in the original claim does not specify the time for decedent's performance, so the beginning of limitations is not apparent from the pleading. The original claim,

however, pleads a unilateral contract, that appellant rendered the performance requested by decedent on decedent's promise of a money consideration. The decedent's promise became binding, and thus enforceable, when appellant rendered an executed consideration by allowing his commission and retirement benefits to lapse. Underwood Typewriter Co. v. Century Realty Co., *supra*; Wickstrom v. Alden, 99 Ill. App.2d 254, 240 N.E.2d 401, 406 [5] (1968); Restatement on Contracts, § 45; Corbin on Contracts, § 63. A statute of limitations begins to run when a right to sue arises on an accrued cause of action. Chemical Workers Basic Union v. Arnold Sav. Bank, 411 S.W.2d 159, 165 [6] (Mo. Banc 1966). And as a general rule, a cause of action for breach of contract accrues, and the right to sue arises, on the failure to do the thing contracted for at the time and in the manner contracted. Baron v. Kurn, 349 Mo. 1202, 164 S.W.2d 310, 316 [2–5] (1942); 31 Am.Jur.2d, Limitations of Actions, §§ 107 and 127. Accordingly, appellant's right to sue on the breach of decedent's oral promise to compensate him for pension loss accrued when appellant gave up his commission, which, by the intendment of the original claim, is reasonably understood to have been some time before July 27, 1953, the close of the Korean War. Appellant's original claim, filed in the probate court on October 13, 1970, more than 17 years after the breach and right to sue accrued, had long since become stale by the five-year bar of § 516.-120, RSMo 1969, V.A.M.S., the governing statute of limitations.

Although appellant's amended claim, which alleges a bilateral contract of mutual promises—including the undertaking, breached by decedent, to compensate appellant by testamentary provision—pleads an action against which limitations did not begin to run until decedent's death [Reighley v. Estate of Fabricius, 332 S.W. 2d 76, 87 [8] (Mo.App.1960)], it did not serve to revive the original claim already barred by limitations. Arpe v. Mesker

Bros. Iron Co., 323 Mo. 640, 19 S.W.2d 668, 670 [2]. An amendment which introduces a cause of action barred by limitations is not effective to avoid the statutory bar. Coleman v. Ziegler, 248 S.W.2d 610, 615 [7] (Mo.1952). If we assume, moreover, that the amended claim pleads a cause of action different and disparate from the original claim and was not affected by the running of limitations until the death of decedent, still it was barred by the six-month statute of nonclaim and was properly concluded by summary judgment.

Appellant contends, however, that the original claim which does not specify when compensation is due from decedent implies a reasonable time for such performance, and the question of reasonable time is for the jury. As a general principle, when a contract is silent as to the time for performance, the law will imply a reasonable time and limitations begins at the expiration of such reasonable time. Bisesi v. Farm & Home Savings & Loan Ass'n of Missouri, 231 Mo.App. 879, 78 S.W.2d 871, 874 [9] (1935); Detmer v. Miller, 220 S.W.2d 739, 743 [1–2] (Mo.App.1949). Where the contract is for the payment of money however, and the time for performance is not fixed by the agreement, "the law will deem the amount due and payable when the party has fully performed his obligations under the contract and nothing remains to be done but payment to him of the amount due". Doerflinger Realty Company v. Fields, 281 S.W.2d 609, 613 [5–7] (Mo.App.1955); Isaac T. Cook Co., v. Bank of St. Louis, 297 S.W.2d 607, 611 [6] (Mo.App.1957); 17 Am.Jur.2d, Contracts § 337. Even if the circumstance of a compensation agreed, but not immediately known, allows an inference of intention that decedent have a reasonable time for performance, it is a performance readily made at virtually any moment in time. Thus, it was as easily determinable in the year 1953 when appellant relinquished his commission, as it has become since by the stipulation of the litigants, that the value

of appellant's pension loss is calculable by the cost of a single premium annuity ($15,-997.37) sufficient to produce the same monthly income as would be paid to claimant had he retained commission in the active reserves. The original claim in probate, filed seventeen years after performance by appellant, is unaffected by the five-year bar of limitations only if, in the circumstances, fair-minded men could differ whether twelve years were reasonably required for decedent to make the promised performance. Bisesi v. Farm & Home Savings & Loan Ass'n of Missouri, *supra*, 78 S.W.2d 1. c. 874 [10]. We hold as a matter of law that decedent breached his promise for performance more than five years before the original claim in probate was filed and that respondent Estate's plea of limitations effectively bars appellant's recovery on the original action, and hence completely.

One point remains for decision. Appellant contends that the defense of limitations is an affirmative defense which must be pleaded by a defendant who would rely upon it, and since respondent did not raise the plea to the original claim in the probate court, it was not available to respondent in the circuit court nor could that court give it cognizance. The formal strictures of pleading do not apply to actions in the probate court [Rule 41.01(a)] [1] therefore the defense of limitations may be invoked before that tribunal without such an express allegation. Cooper v. Jensen, 448 S.W.2d 308, 311 [1–3] (Mo.App. 1969); Broz v. Broz, 132 S.W.2d 1039, 1041 [1–4] (Mo.App.1939). And, at the time appellant's claim was pending for determination in the circuit court, it had been for long the established principle, since modified by rules,[2] that a cause which orig-

inated in the probate court was tried anew in the circuit court without the requirement of formal pleadings. Jensen v. Estate of McCall, 426 S.W.2d 52, 55 [2] (Mo. 1968); In re Franz' Estate, 245 S.W.2d 1, 4 [3] (Mo.1952); Meffert v. Lawson, 315 Mo. 1091, 287 S.W. 610, 611 [5] (1926). The record shows that, in fact, the bar of the statute of limitations was asserted in the circuit court on the motion for summary judgment.

The judgment of the trial court is affirmed.

WASSERSTROM, P. J., and PRITCH-ARD, J., concur.

1. Although not relevant to this review, Rule 41.01(c), given effect September 1, 1972, applies the discovery and other pretrial procedures of Rules 56 and 62 to proceedings in the probate court.

2. Rule 41.01(b), given effect September 1, 1972, authorizes a circuit court to order

the application of Rule 55 relating to pleadings and motions to pending civil actions which originated in the probate court. The judgment we review preceded the effective date of the rule modification and is not affected by it.